UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| RENEWABLE ENERGY SD, LLC, | Case No. 13-CV-0275 (PJS/FLN) |
| Plaintiff, | |
| v. | ORDER |
| POLARIS AMERICA, LLC and CHRISTOPHER A. FILOS, | |
| Defendants. | |

Eric J. Nystrom and Bryan R. Freeman, LINDQUIST & VENNUM PLLP, for plaintiff.

Jeffrey C. Paulson, PAULSON LAW OFFICE, LTD.; Lucas Clayton and Richard G. Jensen, FABYANSKE, WESTRA, HART & THOMPSON, P.A., for defendants.

Defendant Polaris America, LLC ("Polaris") manufactures wind turbines.  Defendant Christopher A. Filos is Polaris's chief executive officer and sole member.  Plaintiff Renewable Energy SD, LLC ("RESD") sells wind turbines and provides related services.  Polaris has supplied wind turbines to RESD since 2010.  Compl. ¶ 13 [ECF No. 1].

No written agreement has ever existed between Polaris and RESD, *see id*. ¶ 12, but RESD alleges that the parties established the terms of an enforceable sales contract through their course of dealing, *see id*. ¶ 15.  RESD contends that, under the parties' usual arrangement, RESD would deposit half of the price of a turbine at the time it placed an order.  *Id*.  Polaris would then begin manufacturing the turbine.  RESD would eventually pay the balance owed on the turbine, and Polaris would promise to deliver the completed turbine within 45 days.  *Id*. ¶ 22.  RESD claims that it long ago paid in full for a number of turbines, but, notwithstanding the parties'

course of dealing and Polaris's promise to deliver turbines within 45 days, those turbines have still not been delivered to RESD's customers. *Id*. ¶ 23.

This matter is before the Court on RESD's motion for a preliminary injunction. ECF No. 30. RESD asks the Court to enjoin Polaris and Filos "from physically delivering or transferring title to any wind turbines pending the determination of RESD's priority rights under the Uniform Commercial Code." *Id*. at 1. In other words, RESD asks the Court to prohibit Polaris from selling or delivering *any* turbine to *any* customer until the Court can adjudicate whether and to what extent RESD has priority rights to Polaris-manufactured turbines. The Court denies RESD's motion for the reasons described below.

### A. Standard of Review

In determining whether to grant a motion for a preliminary injunction, the Court considers four factors: (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant if the injunction is not granted; (3) the balance between this harm and the harm that the other parties will suffer if the injunction is granted; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). Preliminary injunctions are extraordinary remedies, and the party seeking a preliminary injunction bears the burden of establishing its entitlement to such relief under the *Dataphase* factors. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

### B. Likelihood of Success on the Merits

RESD bases its motion for a preliminary injunction on three claims: breach of contract, conversion, and fraud. The strongest of RESD's claims is its breach-of-contract claim. For the reasons explained on the record at the hearing on RESD's preliminary-injunction motion, the

Court concludes that RESD is likely to succeed on at least some aspects of that claim.  RESD is far less likely to succeed on its conversion and fraud claims, but the Court need not discuss those claims because the preliminary relief sought by RESD and the analysis of the remaining *Dataphase* factors is identical for each of RESD's claims.

### C.  Threat of Irreparable Harm

RESD argues that it will be irreparably harmed in three ways if Polaris is not enjoined from selling or delivering turbines to any customer until RESD's priority rights are fully adjudicated.  First, RESD claims that Polaris's failure to deliver the turbines to RESD's customers is irreparably damaging RESD's goodwill and reputation.  Second, RESD claims that Polaris is on the brink of insolvency and that, without preliminary relief, RESD may find itself without an effective remedy for any breach by Polaris.  And third, RESD claims that it has priority rights to the turbines that Polaris has manufactured and that remain in Polaris's possession, and that, in the absence of an injunction, Polaris might sell "RESD's" turbines to someone else and thus defeat RESD's priority rights.  None of these contentions is availing.

First, RESD will not suffer irreparable harm to its goodwill or reputation in the absence of an injunction because there is no evidence that enjoining Polaris from selling turbines to any of its customers will result in RESD's customers getting their turbines delivered more quickly; indeed, as discussed below, the most likely result of such an injunction would be to put Polaris out of business, which would leave RESD's customers empty-handed.  Moreover, there is no evidence that RESD *has* any goodwill or reputation left to protect.  The State of Minnesota has filed suit against RESD alleging that it defrauded its customers by (among other things) misrepresenting the availability of government grants for wind turbines and the projected income

from installing such turbines — actions that have nothing to do with Polaris's failure to deliver turbines on time. *See* ECF No. 39-1. These allegations of fraud have received widespread publicity and, based on these allegations, a Minnesota court has enjoined RESD from soliciting new customers. *See* ECF No. 39-2. In other words, RESD's reputation has already been severely tarnished and will remain severely tarnished whether or not the Court enters the injunction that RESD seeks. And even if enjoining Polaris somehow would salvage some small part of RESD's reputation, that would mean little, as RESD recently filed for bankruptcy under Chapter 7 of the Bankruptcy Code.[1] *See* ECF No. 45.

Second, even if it is true that Polaris is on the brink of insolvency (a claim that Polaris denies), it is unclear how enjoining Polaris from conducting business would prevent irreparable harm to RESD. In fact, just the opposite is likely to be true. If Polaris is as close to insolvency as RESD claims, then an injunction prohibiting Polaris from conducting business may be the straw that breaks the camel's back. As long as Polaris remains in business — that is, as long as Polaris can solicit new customers and generate cash to build new turbines — there is at least *some* chance that Polaris will eventually be able to deliver turbines to RESD's customers. If the Court enjoins Polaris from doing anything that would generate cash, however, Polaris almost surely will be pushed into bankruptcy, and there will be *no* chance that RESD's customers will receive their turbines.

---

[1]Proceedings brought against a debtor are automatically stayed pursuant to 11 U.S.C. § 362. Section 362, however, "does not prevent a plaintiff/debtor from continuing to prosecute its own claims nor does it prevent a defendant from protecting its interests against claims brought by the debtor. This is true, even if the defendant's successful defense will result in the loss of an allegedly valuable claim asserted by the debtor." *In re Palmdale Hills Property, LLC*, 654 F.3d 868, 875 (9th Cir. 2011) (internal citation omitted). *See also Martin-Trigona v. Champion Fed. Sav. & Loan Ass'n*, 892 F.2d 575, 577 (7th Cir. 1989) ("[T]he automatic stay is inapplicable to suits *by* the bankrupt . . . .").

Third, RESD argues that, under the UCC, it has priority rights to turbines that have already been manufactured and that are in Polaris's possession.  RESD further argues that it will be entitled to replevy those turbines if it is successful in proving that Polaris breached the contract.  If Polaris is not enjoined and sells the turbines to others, says RESD, its replevin rights will be extinguished, leaving it with no avenue of recovery against Polaris.

For RESD's argument to work, of course, it must have the priority rights that it claims in Polaris's turbines.  RESD's claim to such priority rights is, however, quite tenuous.  The crux of RESD's argument is that it was assigned a serial number for each turbine that it purchased from Polaris.  RESD argues that it therefore has priority rights to any turbine that is in Polaris's possession and that bears a serial number that was assigned to RESD.  *See* Minn. Stat. § 336.2-501(1) ("In the absence of explicit agreement identification occurs . . . if the contract is for the sale of future goods . . . when goods are shipped, marked or otherwise designated by the seller as goods to which the contract refers . . . .").

The problem with RESD's argument is that there is no evidence that its factual premises are true.  Polaris represented at the hearing on RESD's motion that, at that time, there were only two turbines in its possession, neither of which was fully assembled.  According to Polaris, no serial number had yet been assigned to either of those turbines.  RESD has submitted no evidence contradicting Polaris's assertions.  In other words, there is no evidence in the record that any turbine in Polaris's possession bears *any* serial number, much less a serial number assigned to RESD.  Without such evidence, RESD cannot show that it is entitled to a specific turbine in Polaris's possession.

Moreover, RESD's proposed preliminary injunction would do far more than merely give RESD control of turbines in Polaris's possession. RESD seeks to restrain Polaris from selling or delivering *any* turbines — including turbines that have not yet been manufactured — until RESD's priority rights can be determined. But apart from its argument about serial numbers, RESD does not cite any source of law that would give it priority rights to any particular turbine that Polaris has manufactured or will manufacture in the future. (For example, RESD does not claim that it has a security interest in any of Polaris's turbines.) Because RESD has failed to show that it has priority rights to any of Polaris's turbines, it has failed to show that it will be irreparably harmed if Polaris is not enjoined from selling those turbines pending a determination of RESD's (likely nonexistent) priority rights.

For these reasons, RESD has not shown that it will suffer irreparable harm in the absence of a preliminary injunction. This factor weighs heavily against granting RESD's motion.

### D.  Balance of Harms

The Court also finds that the balance of harms weighs heavily against granting RESD's motion for a preliminary injunction. On the one hand, as explained above, RESD is unlikely to suffer irreparable harmed if its motion for preliminary relief is denied. On the other hand, enjoining Polaris from conducting business while the Court sorts out RESD's putative priority rights would likely bankrupt Polaris, eliminating any chance that the innocent customers of RESD will ever receive the turbines that they purchased. In short, while there is little threat of irreparable harm to RESD should the Court deny its motion, there is a substantial threat of harm to Polaris and (more importantly) RESD's customers should the Court grant the motion.

*E. Public Interest*

Finally, the public interest is best served by maximizing the chances that RESD's customers — who are innocent victims of RESD, Polaris, or both — will receive the turbines that they purchased. As already explained, entering the injunction sought by RESD will make it all but certain that RESD's customers will not receive their turbines. This factor also weighs against granting RESD's motion.

*F. Conclusion*

Although RESD has demonstrated a likelihood of success on its breach-of-contract claim, it has not demonstrated that the injunction it seeks is necessary to prevent it from suffering irreparable harm. Conversely, granting RESD's motion is likely to cause irreparable harm to Polaris (by pushing it into bankruptcy) and many of RESD's own customers (by eliminating any chance that they will receive the turbines that they purchased). Accordingly, RESD's motion for a preliminary injunction is denied.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the motion of plaintiff Renewable Energy SD, LLC for a preliminary injunction [ECF No. 30] is DENIED.

Dated: October 8, 2013                    s/Patrick J. Schiltz
                                          Patrick J. Schiltz
                                          United States District Judge